**William D. McQUILKEN, personal representative of Marlene McQuilken, deceased, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PRUDENTIAL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2000. Decided March 30, 2001.

---

Lester Krasno, Pottsville, for petitioner.

Audrey E. Timm, Blue Bell, for respondent.

Before PELLEGRINI, Judge, FLAHERTY, Judge and McCLOSKEY, Senior Judge.

FLAHERTY, Judge.

Marlene McQuilken (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the order of a Workers' Compensation Judge (WCJ) terminating Claimant's compensation benefits.[1] We vacate and remand.

Pursuant to a Notice of Compensation Payable dated January 22, 1997, Claimant began receiving compensation benefits for an injury described as a "bilateral median nerve entrapment at the wrists left greater than right; bilateral ulnar neuropathy" that occurred on January 12, 1996 while she was working for Prudential (Employer). On June 12, 1996, Claimant's benefits were suspended based on her return to work with restrictions but without a loss of earnings. Some time later, Claimant apparently stopped working. Thereafter, on May 13, 1997, Employer filed a Modification/Suspension Petition alleging that, as of January 13, 1997, Claimant was released to return to a work at a position within her physical restrictions or, in the alternative, is capable of returning to work without a loss of earnings. Claimant returned to work on May 27, 1997 and then was asked to take an early retirement on June 2, 1997.

At the hearings before the WCJ, Claimant testified that she worked as a claims examiner for Employer. Her job duties included entering claims into a computer, typing, writing and calling doctors. Claimant testified that she began to experience problems with her hands while she was at

---

1. Claimant died after this appeal was filed and William D. McQuilken, Claimant's personal representative, was substituted as a party pursuant to Pa.R.A.P. 502(a).

work. Because of these problems, Claimant underwent four different surgeries on both of her hands. Claimant explained that a specific incident at work did not cause these problems, but that they developed over time. On January 7, 1997, Randall W. Culp, M.D. released Claimant to return to work. However, Claimant testified that her hands still hurt at this time. Claimant further testified that, when she returned to work on May 27, 1997, she was still experiencing pain in her hands, left arm and left shoulder. On May 30, 1997, Claimant did not report to work because the pain in her hands was too great. The following Monday, June 2, 1997, Employer informed Claimant that she was fired for missing work on Friday. However, after a discussion with Employer's office of human resources, Claimant was offered an early retirement. The WCJ rejected the testimony of Claimant as not credible and inconsistent.

Employer presented the deposition testimony of Dr. Culp, who began treating Claimant on July 23, 1996. Dr. Culp testified that, after he examined Claimant on January 7, 1997 he determined that Claimant fully recovered from the work-related injury acknowledged in the Notice of Compensation Payable. (Dep. of Dr. Culp, 2/17/98, pp. 36–37). Dr. Culp also testified that, given Claimant's full recovery, she is capable of returning to her job as a claims examiner. The WCJ accepted the testimony of Dr. Culp as credible.

Claimant presented the testimony of Robert Mauthe, M.D., who began treating her on April 2, 1997. After examining Claimant, Dr. Mauthe concluded that Claimant suffers from work-related bilateral carpal tunnel syndrome. (Dep. of Dr. Mauthe, 7/21/98, p. 9). Additionally, Dr. Mauthe stated that Claimant is not capable of returning to her job with Employer because she continues to suffer from a permanent functional impairment of her left ulnar nerve. (Dep. of Dr. Mauthe, 7/21/98, p. 14). The WCJ rejected the testimony of Dr. Mauthe as not credible.

■ By decision and order dated November 18, 1998, the WCJ concluded that Employer proved that Claimant fully recovered from her work-related injury. Accordingly, although Employer did not file a Termination Petition, the WCJ terminated Claimant's benefits as of January 7, 1997. Claimant appealed to the Board, which cited our decision in *Frontini v. Workers' Compensation Appeal Board (Parks Moving & Storage)*, 702 A.2d 8 (Pa.Cmwlth. 1997) and determined that, because Claimant was put on notice that Employer sought a termination of benefits when Dr. Culp testified that Claimant fully recovered, the WCJ did not err by terminating her benefits. This appeal followed.[2]

Claimant raises three issues for our review. First, Claimant argues that the WCJ erred by terminating her benefits when Employer never filed a Termination Petition and never requested a termination of compensation benefits. Second, Claimant contends that the testimony of Dr. Culp, which the WCJ accepted as credible, is not supported by substantial evidence and therefore cannot support a determination that Claimant fully recovered from her work-related injury because Dr. Culp testified that Claimant continues to be impaired as a result of her work-related injury. Third, Claimant argues that the WCJ did not render a reasoned decision.

2. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

In *Frontini*, this court held that a termination of benefits may be proper without the filing of a formal termination petition when the claimant is notified of an employer's intention to seek a termination. As the basis for our decision in *Frontini*, we cited *Hutter v. Workmen's Compensation Appeal Board (Pittsburgh Aluminum Company)*, 665 A.2d 554, 557 (Pa.Cmwlth. 1995), wherein "Claimant was provided with the deposition of Employer's medical expert, and the deposition emphatically stated that Claimant was no longer injured as of February 27, 1992, the date the expert examined her. This clearly notified Claimant that Employer was seeking a termination. There was, therefore, no prejudice to Claimant, nor denial of an opportunity to defend against the termination request."

However, in *Frontini* and *Hutter*, the issue of the claimant's disability was brought before the WCJ through the filing of a Petition to Set Aside Final Receipt, and the question we addressed was whether the WCJ could proceed to terminate the claimant's benefits even though the employer had not filed a Termination Petition. In a Petition to Set Aside Final Receipt, the issue of whether the claimant has fully recovered is already before the WCJ. Thus, we determined that the employer need not file a separate Termination Petition. We also noted that a termination of benefits is also proper when a claimant files a claim petition and the WCJ grants benefits for a closed period, because the extent of the claimant's disability is properly before the WCJ.

 Here, the issue of Claimant's disability was brought before the WCJ when Employer filed a Modification/Suspension Petition. Unlike a Petition to Set Aside Final Receipt, the question of whether a claimant has fully recovered is not before a WCJ in a Modification/Suspension Petition. Rather, the only issue before the WCJ is whether the claimant is capable of returning to available gainful employment. Because of the inherent differences between a Petition to Set Aside Final Receipt and a Modification/Suspension Petition, we decline to extend our holdings in *Frontini* and *Hutter* to this case. Consequently, in order for a termination to be proper absent the filing of a Termination Petition, the issue of a claimant's full recovery or the extent of his disability must already be at issue before the WCJ. Therefore, because Employer had not filed a Termination Petition, the issue of whether Claimant fully recovered was not properly before the WCJ and he had no authority to terminate Claimant's benefits.[3]

Accordingly, the order of the Board is vacated and this case is remanded to the Board for further remand to the WCJ to allow the WCJ to make a determination on the issue properly before him, which was whether Employer sustained its burden of proving that Claimant was capable of returning to available gainful employment.

### ORDER

AND NOW, March 30, 2001, the order of the Workers' Compensation Appeal Board docketed at A98–4730 and dated October 26, 1999 is hereby vacated and this case is remanded to the Board for further remand to the WCJ as set forth in the foregoing opinion.

Jurisdiction relinquished.

---

**3.** Because we vacate the decision of the Board which affirmed the decision of the WCJ terminating Claimant's benefits, the remaining issues Claimant raises in her petition for review are moot.